CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
5/26/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| TERA DUDIS,<br><br>                 *Plaintiff*,<br><br>v.<br><br>CENTRA HEALTH, INC.,<br><br>                 *Defendant.* | CASE NO. 6:20-cv-00076<br><br>MEMORANDUM OPINION<br>& ORDER<br><br>JUDGE NORMAN K. MOON |

      Plaintiff Tera Dudis worked as a Senior Medical Physicist at Defendant Centra Health, Inc., from mid-2016 until early 2020. Following her separation from employment with Centra, she brought a charge of discrimination against Centra with the Equal Employment Opportunity Commission. After receiving a notice of right to sue, Dudis filed this complaint alleging claims against Centra for retaliation and constructive discharge, in violation of Title VII. Because this matter is before the Court on Centra's motion to dismiss, the Court must assume the truth of all well-pleaded factual allegations in Dudis' complaint, and draw all reasonable inferences therefrom in her favor.

      For the following reasons, the Court will allow Dudis' retaliation claim to proceed in part. The Court finds that Dudis' allegations that Centra suspended her for five days immediately after she reported sexual harassment state a plausible retaliation claim. However, the Court will dismiss the retaliation claim based upon Centra's allegedly "bogus investigation" of Dudis, and further will dismiss Dudis' constructive discharge claim.

**Background**

As described in the First Amended Complaint (generally, the "complaint"), Dudis was hired by Centra as a Senior Medical Physicist in July 2016. Dkt. 15 ¶ 6. On November 20, 2019, Dudis "made a sexual harassment complaint to her supervisor, Stephen Terry, the Director of Physics; and Dr. Joy Hilliard, Radiation Oncologist." Id. ¶ 7. Dudis alleges that "she was being sexually harassed by a co-worker." Id. On November 24, Dudis "memorialized her sexual harassment compliant in writing directed to Jennifer Kellogg, [Centra's] HR Senior Business Partner." Id. ¶ 8. The very next day, November 25, Stephen Terry and Carol Riggins, Managing Director of Centra's Cancer Center, "took [Dudis'] employment badge; removed her access to her work computer and network; and ordered her to leave the premises." Id. ¶ 9. Dudis asserts that she was shocked and humiliated. Id. ¶ 10. On November 27, Centra "advised [Dudis] that she was suspended without pay," and provided neither "the duration of nor the reason for the suspension." Id. ¶ 11. Dudis alleges that Centra suspended her because she complained of sexual harassment by a co-worker just days earlier (on November 20 and 24). Id. ¶ 12. Ultimately, on December 2, Centra's human resources department called Dudis and informed her that "the decision to suspend her had been reversed and she could return to work." Id. ¶ 13.

In her complaint, Dudis further asserts that, immediately following her suspension and upon her return to work, Centra "concocted a bogus investigation" for her "alleged workplace infractions." Id. ¶ 14. Dudis alleges that this investigation was part of a "deceitful effort to justify the suspension as motivated by something other than reprisal for protected activity." Id. She calls it a "bogus investigation," "a pretext for unlawful retaliation," and "a ruse," which "did not result in any disciplinary action" against her. Id. ¶¶ 14–15. Under these circumstances, Dudis "lost trust in [Centra's] integrity" and felt that she "had no choice but to resign," as "any reasonable person

in [her] position" would have done. Id. ¶¶ 15–16. Thus, Dudis asserts she was "constructively discharged," and "forced to resign" on February 4, 2020. Id. ¶ 18.

The next day, February 5, Dudis filed an EEOC charge of discrimination against Centra. Dkt. 15-1. On September 1, 2020, the EEOC issued a notice of right to sue. Dkt. 15-2. Dudis filed her original complaint against Centra in this Court on November 8, 2020. Dkt. 1. Centra filed a motion to dismiss the original complaint, Dkt. 4, in response to which Dudis filed a motion for leave to amend her complaint, Dkt. 10. The Court granted Dudis' motion for leave to amend and denied as moot Centra's motion to dismiss, allowing Centra to raise any arguments in response to Dudis' amended complaint. Dkt. 14.

Centra has since filed the motion to dismiss Dudis' amended complaint that is presently under consideration by the Court. Dkt. 16. The motion is now fully briefed, Dkts. 17–19, and the Court heard argument on May 2, 2021.

## Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Id. at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). That is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics"; instead, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

**Reasoning**

1. Retaliation

Dudis' first claim is for retaliation in violation of Title VII. She alleges that Centra suspended her on November 25, 2019, because she made sexual harassment complaints to her supervisors and human resources on November 20 and 24, 2019. Dkt. 15 ¶¶ 7–12. Centra contends that Dudis' retaliation claim fails as a matter of law, arguing that Dudis has not pleaded the material adverse action element of a retaliation claim. In Centra's view, Dudis' suspension—which Centra argues was only for three business days before it was "reversed" and for which she later was paid—does not constitute a material adverse action. Dkt. 19 at 3–7.

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." Strothers v. City of Laurel, Md., 895 F.3d 317, 327 (4th Cir. 2018). The Fourth Circuit in Strothers recently explained that "[t]he scope of Title VII's

4

anti-retaliation provision, § 2000e-3, is broader than the anti-discrimination provision," and that "retaliatory actions need not 'affect the terms and conditions' of employment' to come within Title VII's prohibition." Id. at 327 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006)). Retaliatory actions must, however, be "materially adverse," meaning that they "'might have dissuaded a reasonable worker' from engaging in protected activity." Id. (quoting Burlington, 548 U.S. at 68).

On this motion to dismiss, the main issue in dispute is whether Centra took "materially adverse" actions against her, which "'might have dissuaded a reasonable worker' from engaging in protected activity." Strothers, 895 F.3d at 327 (quoting Burlington, 548 U.S. at 68). The Supreme Court in Burlington described the issue of "material adversity" as "important to separate significant from trivial harms," and thereby separate those significant "employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers," from those that are insignificant, i.e., "petty slights, minor annoyances, and simple lack of good manners" that may otherwise follow a report of discrimination. 548 U.S. at 68 (internal quotation marks omitted). The Court explained that "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." Id. at 69. In Burlington, the Court applied that standard and found sufficient evidence to support the jury's finding that the adverse action element was met when the employer suspended the plaintiff without pay for 37 days, even though the employer ultimately reinstated the plaintiff with backpay. Id. at 70–72.

The Court concludes that Dudis' allegations about her suspension have sufficiently pleaded the adverse action element to survive Centra's motion to dismiss. Dudis alleges that she complained to her supervisors that a co-worker was sexually harassing her on November 20,

2019 and filed a written complaint with human resources on November 24, 2019. Dkt. 15 ¶¶ 7–8. The next day, November 25, Centra management "took [Dudis'] employment badge; removed her access to her work computer and network; and ordered her to leave the premises." Id. ¶ 9. On November 27, Centra informed Dudis that "she was suspended without pay," and even then, did not tell her "the duration of nor the reason for the suspension." Id. ¶ 11. Dudis alleges that this course of conduct "shocked, humiliated and emotionally devastated" her. Id. ¶ 10; id. ¶ 11 (describing the possibility of being "suspended without pay for an indefinite period of time," as "terrifying and emotionally devastating for [Dudis]").

      Significantly, when Centra suspended Dudis, the action was swift, and suspension was indefinite. She did not know if she would be out of work for a day; a week; a month; or more. Nor was she given any explanation. Accepting Dudis' well-pleaded facts as true and taking all reasonable inferences in her favor, the allegations in the complaint support the existence of a material adverse action by her employer, since "an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received backpay." Burlington, 548 U.S. at 73 (emphasis added). The Fourth Circuit has also reversed a decision dismissing a retaliation claim on the basis that an employer's conduct, including a later-rescinded five-day suspension, did not suffice as a materially adverse action. Prince-Garrison v. Md. Dep't of Health & Mental Hygiene, 317 F. App'x 351, 355 (4th Cir. 2009) (per curiam) (unpublished). Although the employer had later "retracted a five-day suspension and a prospective termination, and gave Price-Garrison backpay," the Fourth Circuit held that the plaintiff had stated a claim of retaliation, noting that she had been "immediately suspended" after her complaints of discrimination and "even after these actions were rescinded, [the plaintiff] Prince-Garrison contends, she was micromanaged and treated with hostility." Id.

Centra argues that Cabral v. Brennan, 853 F.3d 763 (5th Cir. 2017), requires dismissal. The Court disagrees. In that case, the Fifth Circuit had explained that there was no "per se rule" from Burlington that "suspension without pay constitutes a materially adverse action"—rather, it "could constitute a materially adverse action, depending on the particular circumstances." Id. at 767 (emphasis added). The district court had held that the plaintiff "failed to meet his burden of producing sufficient evidence to overcome summary judgment that he suffered a materially adverse employment action when he was suspended without pay for two days," and thus, had "not demonstrated that his suspension was objectively material." Cabral v. Brennan, No. 5:14-cv-1037, 2016 WL 8849758, at *5 (W.D. Tex. May 11, 2016). The Fifth Circuit affirmed the district court's decision in that regard, holding that while the plaintiff in Burlington had produced "sufficient evidence of a materially adverse action to defeat summary judgment," the plaintiff in Cabral was "easily distinguishable," because he had only relied on conclusory statements of emotional and psychological harm, and "provide[d] no documentation of any alleged harm." 853 F.3d at 767. Significantly, this case, unlike Cabral, is before the Court on a motion to dismiss and no such documentation is needed at this point, as would be required of a plaintiff opposing a motion for summary judgment on the issue.

Centra also makes much of the fact that Plaintiff was only suspended for "three business days." Dkt. 19 at 1. However, there are five calendar days from the date of Plaintiff's suspension and the date Centra rescinded it, and the Court cannot accept on a motion to dismiss and taking all reasonable inferences in Dudis' favor that several days' suspension did not impact Plaintiff because those days fell on a weekend.

By contrast, the Court does not consider Dudis to have plausibly pleaded that the alleged "bogus investigation" into her constituted materially adverse action. Dkt. 15 ¶ 14. Her complaint

7

offers few non-conclusory, factual allegations on the issue. Dudis alleges that "[i]mmediately following her unlawful suspension, and in a deceitful effort to justify the suspension as motivated by something other than reprisal for protected activity, [Centra] concocted a bogus investigation of Plaintiff for alleged workplace infractions." Id. She also alleges that "[t]his bogus investigation was a ruse, i.e., a pretext for unlawful retaliation and did not result in any disciplinary action against Plaintiff." Id. Elsewhere, she calls it a "bogus investigation" several times. Id. ¶¶ 15, 22. These allegations are heavy on characterizations, and light on facts. The Court accepts that an investigation was started immediately after Dudis' suspension, and that it did not result in disciplinary action—which are both factual allegations. Id. ¶ 14. Otherwise, the only other allegations regarding the investigation are Dudis' characterizations of it as "bogus," a "ruse," a "pretext," and "deceitful"—which all do no more than ask the Court to accept legal conclusions devoid of factual content. This, the Court cannot do. Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Whether the evidence will bear out Dudis' allegations concerning a materially adverse action on account of her suspension, and whether there will be a dispute of material fact on the issue are questions for another day. It would be premature to dismiss the case on this ground, as Dudis' allegations have sufficed to state a claim for retaliation.

2. Constructive Discharge

Dudis also claims that Centra "constructively discharged" her when "she was forced to resign on February 4, 2020," in violation of Title VII. Dkt. 15 ¶¶ 1, 18. Dudis alleges that "[b]ecause of [Centra's] treatment of [her], i.e., the unlawful suspension and the bogus investigation designed to justify the suspension," she "had no choice but to resign." Id. ¶ 15; see

8

also id. ¶¶ 1, 14–18, 22. In its motion to dismiss, Centra argues that Dudis' constructive discharge claim fails because it is based on "implausible and conclusory" allegations. Dkt. 19 at 7–9. Centra contends that Dudis "fails to allege any intolerable conduct by Centra, at any point, including during the two-month gap between the investigation that exonerated [her] (with no adverse consequences) and her resignation." Id. at 9. Centra also argues that the "alleged investigation that admittedly did not result in any adverse action cannot establish or support 'intolerable' conduct . . . ." Id.

An employee claiming constructive discharge must allege facts establishing (1) "[she] was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign," and (2) that she "actually resigned" on account of those conditions. Green v. Brennan, 136 S. Ct. 1769, 1777 (2016); see also Perkins v. Int'l Paper Co., 936 F.3d 196, 211–12 (4th Cir. 2019). The first element, also described as the "intolerability requirement," is not satisfied merely if a reasonable employee "would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." Perkins, 936 F.3d at 212. Rather, the "intolerability" must be such that a reasonable person objectively "would have felt compelled to resign," i.e., "would have had no choice but to resign." Id. (italics omitted). Difficult or unpleasant working conditions, dissatisfaction with work assignments, or a feeling of being unfairly criticized are insufficient. Id.; see also Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994).

Dudis' allegations, taken as true and drawing all reasonable inferences in her favor, do not satisfy the intolerability element of a constructive discharge claim. Dudis alleges that Centra's "bogus" and "pretextual" investigation following her return to Centra in early December 2019 made her lose trust in Centra and supported her claim of constructive discharge.

Dkt. 15 ¶¶ 14–18, 22. Again, simply calling the investigation "bogus," "pretextual," and "ruse," without further factual elaboration, does nothing more than ask the Court to accept the truth of bare legal conclusions. Iqbal, 556 U.S. at 679. Dudis argues that this case is like the Supreme Court's decision in Green, in which the plaintiff's "management allegedly disingenuously threatened him with the prospect of criminal prosecution," while here, Dudis' "management disingenuously threatened her with the prospect of disciplinary action." Dkt. 18 at 7 (emphasis added). But while additional allegations of fact may bear out this described similarity, they are not presently in the complaint.

In light of the conclusory allegations about the later investigation, the Court cannot conclude that Dudis' suspension two months earlier, without more, constituted intolerable, discriminatory conditions that could have prompted a reasonable person to feel compelled to resign two months later, and, that Dudis "actually resigned" on account of those conditions. Green, 136 S. Ct. at 1777; Perkins, 936 F.3d at 211–12. Accordingly, the Court will dismiss Dudis' constructive discharge claim.

For these reasons, the Court will **GRANT in part** and **DENY in part** Centra's motion to dismiss. Dkt. 16.

It is so **ORDERED**.

The Clerk of Court is directed to send a copy of this Memorandum Opinion & Order to all counsel of record.

ENTERED this 26th day of May, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE